UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRADLEY TALAMO

VERSUS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

CIVIL ACTION

NO.   20-535-JWD-RLB

## RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment* (Doc. 16) filed by Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm"). Plaintiff Bradley Talamo ("Plaintiff" or "Talamo") opposes the motion. (Doc. 18.) Defendant filed a reply. (Doc. 19.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is denied.

### I.    Relevant Factual Background

This lawsuit arises from an automobile accident that occurred on August 4, 2019. (*See* Pet., Doc. 1-2 at 4–7.) Plaintiff was a guest passenger in a vehicle that was involved in a head-on collision with a vehicle operated by Ross Labrosse, who reportedly lost control while driving on I-10 near Pass Christian, Mississippi. (List of Undisputed Material Facts by Defendant ("LUMF") 1, Doc. 16-1.)[1]

Prior to the accident, State Farm issued an automobile liability insurance policy providing for uninsured/underinsured motorist ("UM") coverage to Plaintiff's mother, Cynthia Talamo

---

[1] This fact was admitted to by Plaintiff in his Opposing Statement of Material Facts ("OSMF"). (Doc. 18-1 at 1, ¶ 1.) Unless otherwise indicated, when the Court cites to LUMF in support of a fact, that fact has been admitted by Plaintiff in the OSMF.

1

("Ms. Talamo"). (LUMF 2.) Ms. Talamo is the policy's named insured, at her address of 463 Parlange Drive in Pearl River, Louisiana ("Parlange address"), according to the Declarations Page. (LUMF 7; *see also* Doc. 16-5 at 3.) Plaintiff, age 34, (LUMF 8) is neither a named insured nor a listed driver under the State Farm policy. (LUMF 3–4.)

The "Uninsured Motor Vehicle Coverage and 'Economic-Only' Uninsured Motor Vehicle Coverage" section of the policy states, in pertinent part:

> ***Insured*** means:
>
> 1. ***you***;
> 2. ***resident relatives***;
> 3. any other ***person*** while ***occupying***:
>     a. ***your car***;
>     b. a ***newly acquired car***;
>     c. a ***temporary or substitute car***; or
>     d. a rental ***private passenger car*** rented to ***you*** . . . .

(Doc. 16-5 at 19–20; *see also* LUMF 5.) Importantly, the policy defines the term "resident relative" as follows:

> ***Resident Relative*** means a ***person***, other than ***you***, who resides primarily with the first ***person*** shown as a named insured on the Declarations Page and who is:
>
> 1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured[ ] . . . .

(Doc. 16-5 at 9; *see also* LUMF 6.)

Plaintiff initiated this action in state court on July 10, 2020 by filing a Petition for Damages against Defendant, seeking recovery for the injuries he sustained as a result of the accident. (Doc. 1-2 at 4–7.) The Petition alleges that the adverse driver was an uninsured motorist and that the vehicle in which Plaintiff was riding at the time of the accident was underinsured. (*Id.* at 5.) Plaintiff further alleges that he is entitled to UM coverage under Ms.

Talamo's State Farm policy because he is an insured "resident relative." (*Id*. at 5.) Defendant subsequently removed Plaintiff's action to this Court based on diversity jurisdiction. (Doc. 1.) Defendant now moves for summary judgment on Plaintiff's claims against it, asserting that the policy at issue provides no UM coverage for Plaintiff. (Doc. 16.)

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991.)

## III. Discussion

### A. Parties' Arguments

### *1. Defendant's Original Memorandum (Doc. 16-2)*

In its motion for summary judgment, Defendant seeks dismissal of Plaintiff's claims with prejudice on the grounds that there is no genuine issue of material fact regarding UM coverage under the State Farm policy issued to Ms. Talamo. According to Defendant, Plaintiff is not an insured because (1) he is not a named insured and (2) he does not qualify as a "resident relative" of Ms. Talamo under the terms of the policy. (Doc. 16-2 at 1.) Defendant contends that the record contains "overwhelming evidence" that Plaintiff "did not live at his mother's [Parlange] residence listed on the policy . . . and that his primary residence was with his girlfriend, Jennifer Hutchinson, and his three-year-old daughter, Demi Talamo, at 56162 Blue Ridge Drive in Slidell, Louisiana . . . ." (*Id.*)

In support of its motion, Defendant attaches as exhibits the transcript from Plaintiff's Examination Under Oath ("EUO") and other documentary evidence obtained during the course of discovery in this matter. Relying on these exhibits, Defendant argues:

> According to Plaintiff's driver's license, the Office of Motor Vehicles, his cable provider, his phone provider, his medical providers, his pharmacist, his employer, the commission that certifies his credentials as a crane operator, his Local Union, the IRS, his fishing license, his ATV registration, and the majority of his testimony—all of which has been enumerated and supported in the attached List of Undisputed Material Facts—[Plaintiff] resided at the Blue Ridge Slidell address at the time of the August 4, 2019 accident.

(*Id.* at 7–8 (referencing LUMF 12, 14–20, 22–26).)

Additionally, Defendant cites to *State Farm Fire & Cas. Co. v. Akingbola*, 2017 WL 2311742, at *2 (E.D. La. May 26, 2017), in which the Eastern District of Louisiana explained: "The intention of a person to be a resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in light of his conduct and circumstances of life." (Doc. 16-2 at 7.) Defendant urges that the referenced exhibits to its

motion, "which show a long-standing history of documentation" associating Plaintiff with the Blue Ridge address, make clear that Plaintiff did not primarily reside with his mother at the time of the accident. (*Id.* at 8.) Defendant thus argues that Plaintiff does not fit the policy's definition of "resident relative" and, consequently, "there is no interpretation" of the policy that can support UM coverage for Plaintiff's claimed damages. (*Id.*)

2. *Plaintiff's Opposition (Doc. 18)*

In opposition, Plaintiff argues that Defendant's motion should be denied because he is insured as a "resident relative" under the terms of the policy. (Doc. 18 at 1.) Although Plaintiff acknowledges that he resides at both the Parlange and Blue Ridge addresses, (*id.* at 3 (citing Doc. 18-3)) he maintains that his primary residence is the Parlange address. (Doc. 18 at 9.)

In support of this assertion, Plaintiff analogizes the facts of this case to Louisiana Supreme Court decisions examining whether someone is a "resident" of an insured's household. (*See id.* at 5–8.) Plaintiff also points to certain record evidence to support his position. For instance, when asked to provide his name and address for the record during Plaintiff's EUO, he responded: "My name is Brad Talamo, and my address is 436 Parlange Drive, Pearl River, 70452." (*Id.* at 3 (citing Doc. 18-4).) Plaintiff further contends that he consistently maintained his residence at the Parlange address and refers to other EUO testimony, in which Plaintiff explained that, around the time of the accident, he routinely split his time between the Parlange and Blue Ridge addresses, spending a few nights at both each week to spend time with his girlfriend, Ms. Hutchinson. (Doc. 18 at 5–6 (citing Doc. 18-8).)

Plaintiff also asserts that his testimony is corroborated by Ms. Talamo's affidavit and EUO. (Doc. 18 at 9 (citing Doc. 18-6; Doc. 18-11; Doc. 18-12).) During Ms. Talamo's EUO, she testified:

5

> Q: What period of time was [Plaintiff] staying with [Ms. Hutchinson] at Blue Ridge?
> A: I guess it depends upon how many days you're talking about. I mean, I don't know. He spent half of the time here [at the Parlange address], half of the time there [at the Blue Ridge address]. If she wasn't here, he didn't really care to stay there.
> \* \* \*
> Q: All right. So when you say half and half, that's not a calculation but more of a gut feeling on your part?
> A: He comes and goes as he pleases, just as I do. You know, I go over there when I want to. I think my husband's over there working on his boat right now . . . .

(Doc. 18 at 9 (quoting Doc. 18-11).) In her affidavit, Ms. Talamo attests that, at the time of the accident, Plaintiff was a resident at the Parlange address, that he had his own key, that he was free to come and go as he pleased, that he kept belongings there, and that he had a bedroom there. (Doc. 18-6; *see also* Doc. 18 at 9 (citing Doc. 18-12).) Plaintiff attests to these same facts in his affidavit. (Doc. 18-7; *see also* Doc. 18 at 7 (quoting Doc. 18-3).) Finally, Plaintiff represents that he receives "a significant portion of his mail at the Parlange address," including a monthly gym membership bill and bank account statements. (Doc. 18 at 7 (referencing Doc. 18-10).) Plaintiff concludes, based on this evidence and the relevant Louisiana jurisprudence, that he should be considered a "resident relative" under the policy and therefore afforded UM coverage for the subject accident. (Doc. 18 at 9.)

### 3. *Defendant's Reply (Doc. 19)*

In response, Defendant argues that Plaintiff failed to identify any evidence or jurisprudence establishing that he primarily resided at his mother's Parlange address. (Doc. 19 at 1.) Defendant observes that Plaintiff's opposition provides "an exhaustive analysis" of why Plaintiff is a resident of the Parlange address. (*Id.*) But according to Defendant, Plaintiff's argument "mistakes residing at one location for residing *primarily* at one location, per the clear language of the policy." (*Id.* (emphasis in original).) Next, Defendant rejects the jurisprudence cited in Plaintiff's opposition as inapplicable because the cases do not specifically address the

6

issue of whether someone is "primarily" a resident of one location over another. (*Id*. at 1–2.) For instance, in distinguishing *Bond v. Commercial Union Assurance Co.*, 407 So. 2d 401 (La. 1981), Defendant argues: "Although Plaintiff cites *Bond* to say that 'ambiguity in an instrument is resolved against the draftsman' . . . the word 'primarily' is unequivocal. The word primarily is even quantifiable, meaning 'greater than' or 'over 50%.' " (Doc. 19 at 2 (referencing Doc. 18 at 6).)

Defendant asserts that, according to Plaintiff's own EUO testimony, he stayed at the Blue Ridge address three times per week, which is "greater than" staying at the Parlange address twice per week. (Doc. 19 at 2–3 (citing Doc. 18 at 5–6).) Defendant also references Ms. Talamo's EUO testimony that Plaintiff spent half of the time at the Parlange address and the other half at the Blue Ridge address. (Doc. 19 at 3 (citing Doc. 18 at 9).) Again, Defendant emphasizes: "[F]ifty percent is not enough. Spending fifty percent of the time at two residences does not make either residence the primary residence." (*Id*.) Defendant similarly rejects the remaining testimony from Plaintiff's EUO cited in the opposition as insufficient "to demonstrate primary residency," since none of it proves that Plaintiff stayed at the Parlange address "more often" than the Blue Ridge address. (*Id*. at 2–3.)

Finally, in response to Plaintiff's assertion that he received mail at the Parlange address, Defendant argues that the two items Plaintiff pointed to (i.e., monthly gym bill and bank statements) are clearly outweighed by Defendant's undisputed facts, admitted to by Plaintiff, which point to Plaintiff being a primary resident of the Blue Ridge address. (*Id*. at 4 (referencing Doc. 18 at 7; LUMF, Doc. 16-1).) Defendant closes by re-urging that Plaintiff is not a "resident relative" as defined by the State Farm policy at issue to whom coverage should be afforded. (Doc. 19 at 5.)

### B. Applicable Law

#### *1. Interpretation of Insurance Policies*

In *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583 (La. 2007), the Louisiana Supreme Court laid out the comprehensive and well-established framework for interpreting insurance policies under Louisiana law, which this Court now quotes in full:

> In analyzing insurance policies, certain elementary legal principles apply. First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code.
>
> According to those rules, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent. Courts begin their analysis of the parties' common intent by examining the words of the insurance contract itself. In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning.
>
> An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. Neither should an insurance policy be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.
>
> When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent.
>
> Nevertheless, if, after applying the general rules of contractual interpretation to an insurance contract, an ambiguity remains, the ambiguous contractual provision is generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. This strict construction principle applies, however, only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance

policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.

The determination of whether a contract is clear or ambiguous is a question of law. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate.

*Sims*, 956 So. 2d at 588–90 (citations omitted).

The Louisiana Supreme Court has also made clear:

When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy. Importantly, when making this determination, any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage.

*Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00); 774 So. 2d 119, 124, *opinion corrected on reh'g*, 2000-0947 (La. 3/16/01); 782 So. 2d 573 (citations omitted).

"The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion for summary judgment." *Green v. State Farm Mut. Auto. Ins. Co.*, 07-0094, p. 3 (La. App. 1st Cir. 11/2/07), 978 So.2d 912, 914, *writ denied*, 08-0074 (La. 3/7/08), 977 So.2d 917. "Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material acts shown by the evidence supporting the motion, under which coverage could be afforded." *Reynolds v. Select Props, Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180, 1183.

### 2. *UM Coverage in Louisiana*

In Louisiana, UM insurance is governed by La. R.S. § 22:1295. "Uninsured motorist coverage embodies a strong public policy, which is to provide full recovery for the innocent automobile accident victims who suffer damages caused by a tortfeasor who has no coverage or

9

is not adequately covered by liability insurance." *Bernard v. Ellis*, 11-2377, p. 10 (La. 7/2/12), 111 So. 3d 995, 1002. "To carry out the objective of providing reparation for persons injured through no fault of their own," the Louisiana Supreme Court has held that the UM statute "is to be liberally construed." *Id*. at 1003.

### C. Analysis

The issue in resolving the instant motion for summary judgment is whether the undisputed facts demonstrate that Plaintiff is not entitled to UM coverage under the State Farm policy. More specifically, the Court must determine whether the undisputed facts establish that Plaintiff was not a "resident relative" of his mother's Parlange address at the time of the accident. Again, the policy provides UM coverage for "resident relatives," (*see* Doc. 16-5 at 19; *see also* LUMF 5) which the policy defines as someone "who resides primarily with the first person shown as the named insured on the Declarations Page" and who is "related to that named insured." (Doc. 16-5 at 9; *see also* LUMF 6.) The parties agree in this case that Plaintiff is related to the named insured, Ms. Talamo. (Doc. 16-2 at 1.)

"[W]hether a person is or is not a resident of a household is a question of law as well as a question of fact that is to be determined from the facts of the case. The question is largely one of intention. The intention of a person to be a resident of a particular place is determined by his expressions at times not suspicious, and his testimony, when called on, considered in light of his conduct and circumstances of life." *State Farm Fire & Cas. Co. v. Akingbola*, 2017 WL 2311742, *2 (E.D. La. May 26, 2017) (quoting *Miley v. Louisiana Farm Bureau Cas. Ins. Co.*, 599 So. 2d 791, 798 (La. App. 1st Cir. 1992), *writ denied*, 604 So. 2d 1313 (La. 1992)) (internal quotation marks omitted). "Although residency is dependent on the facts of each case, the principal test is physical presence with the intention to continue living there." *Prudhomme v.*

10

*Imperial Fire & Cas. Ins. Co.*, 95-1502, p. 3 (La. App. 3d Cir. 4/3/96), 671 So.2d 1116, 1119 (citing *Miley*, 599 So.2d 791 (La. App. 1st Cir. 1992)).

Defendant contends that the policy's use of the word "primarily" is clear and unequivocal. (*See* Doc. 19 at 1–2.) Defendant asserts, without citation to any authority, that the term "primarily" means "greater than" or "over 50%" in this context. (*Id*. at 2.) Yet the policy simply states that a "resident relative" is a person "who resides primarily with" the named insured. (*See* Doc. 16-5 at 9.) There is no definition, description, or example of what constitutes residing "primarily" with the insured. (*See id*.) Thus, the Court is not persuaded that "resides primarily" unequivocally means "over 50%" based on the language in the policy.

Since the term "resides primarily" apparently has no absolute or precise meaning, "any doubt as to the extent or fact of coverage under it will be understood in its most inclusive sense, in accordance with the settled principle that ambiguity in an instrument is resolved against the draftsman." *Bond v. Commercial Union Assur. Co.*, 407 So. 2d 401, 407–08 (La. 1981) (citation omitted).

The record in this case contains documentary evidence that Plaintiff utilized the Blue Ridge address for his commercial driver's and fishing licenses (LUMF 12, 16); cable and cell service (LUMF 14–15); boat registration (LUMF 17); voter registration (LUMF 29); employment (LUMF 22); health insurance (LUMF 21); medical records (LUMF 19–20); and tax records (LUMF 26–27.) Additionally, the police report for the subject automobile accident lists Plaintiff's address as the Blue Ridge address. (LUMF 11.) However, the record evidence also shows that Plaintiff utilized the Parlange address for registration renewals for his primary vehicle

(OSMF at 2, ¶ 1), his bank account (OSMF at 3, ¶ 2), and his gym membership (OSMF at 3, ¶ 3).[2]

Defendant has identified significant documentary evidence regarding Plaintiff's repeated use of the Blue Ridge address as his residential address in numerous contexts. But as the Louisiana Supreme Court has explained: "Whether a person is or is not a resident of a particular place . . . is to be determined from all of the facts of each particular case. Mere isolated facts cannot be relied on wholly to determine the issue." *Bond*, 407 So. 2d at 408 (internal citations omitted). Importantly, Plaintiff has identified testimonial evidence that sets forth specific facts relevant to Plaintiff's consistent physical presence at the Parlange address and his intent to reside there. For example, Ms. Talamo testified that Plaintiff spent half of his time at the Parlange address and half of the time at the Blue Ridge address. (Doc. 18-11.) Similarly, Plaintiff testified that, around the time of the accident, he split his time between both addresses, spending a few nights at both each week, depending on his girlfriend's schedule. (*See* Doc. 16-6 at 48–49.) Ms. Talamo also stated that Plaintiff and his daughter both have rooms at the Parlange address. (Doc. 18-12.) Moreover, Ms. Talamo and Plaintiff attested that Plaintiff was free to come and go from the Parlange address as he pleased, that he kept personal belongings there, and that he had his own key. (Doc. 18-6; Doc. 18-7.)

Considering the evidence presented and drawing all inferences in Plaintiff's favor, as the nonmoving party, and given Louisiana's general principles regarding interpretation of insurance contracts and favoring UM coverage, the Court finds that Plaintiff has identified specific facts in the record showing that there is a genuine issue for trial as to whether Plaintiff resided primarily at the Parlange address at the time of the accident. Because a genuine issue exists as to whether

---

[2] The additional facts included in Plaintiff's OSMF were not controverted by Defendant in its reply brief; accordingly, these additional facts are deemed admitted for purposes of this motion under Local Court Rule 56(f).

Plaintiff is entitled to UM coverage as a "resident relative" of Ms. Talamo under the State Farm policy at issue, summary judgment is not warranted.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 16) filed by Defendant State Farm Mutual Automobile Insurance Company is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>January 18, 2022</u>.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**